IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

PREMCOR REFINING GROUP, INC.,

                   Plaintiff,                  Case No. 3:04 CV 7717

    -vs-

                                            MEMORANDUM OPINION

BORN, INC.,

                   Defendant.

KATZ, J.

      This matter is before the Court on the motion of Defendant to dismiss for lack of personal jurisdiction or, in the alternative, for transfer of venue (Doc. No. 6). Plaintiff has filed a memorandum in opposition thereto and Defendant has filed a reply. For the reasons which follow, Defendant's motion will be denied.

## BACKGROUND

      Plaintiff, Premcor Refining Group, Inc. ("Premcor") is a Delaware corporation with its principal place of business located in Connecticut, but which owns and operates a petroleum refinery in Lima, Ohio. Defendant, Born, Inc. ("Born") is in the business of designing and manufacturing direct-fired furnace equipment for various applications, including for use in the petro-chemical industry.

      On February 4, 2003, Premcor issued a request for quotes ("RFQ"). The RFQ solicited bids for the manufacture and delivery of a replacement furnace convection section to be incorporated into Premcor's equipment. The section was to be shipped to and installed by

Premcor in its facility located in Lima, Ohio. On February 20, 2003, Born submitted its bid ("Bid") in response to the RFQ. After certain Bid clarifications were received by Born, Premcor issued its purchase order to Born on or about March 28, 2003. That was executed by Born at its facility in Oklahoma and returned to Premcor at its Lima facility via facsimile on or about March 31, 2003. The delivery date set forth in the purchase order was September 26, 2003, and the contract price was $932,170 plus freight from Tulsa, Oklahoma to Lima, Ohio - approximately $33,000. Shipping was to be F.O.B. the Premcor refinery in Lima, Ohio.

Following the delivery of the contract on March 31, 2003, a meeting occurred in Lima, Ohio on April 10, 2003, attended by representatives of both parties, the notes reflecting that delivery was to be September 26, 2003. Additional exchanges took place over time by both telephone, fax, and mail. Ultimately, the equipment to be manufactured by Born pursuant to the contract between the parties was not shipped in accordance with the contract, causing delays and the filing on November 17, 2004 of the complaint in this case.

The Bid submitted by Born contained a choice of law provision requiring Oklahoma law to be utilized, but the final purchase order issued by Premcor and accepted as a binding contract by Born contained an Ohio choice of law provision. That being the case, the Court begins its consideration of the subject motion by a review of Ohio Revised Code § 2307.382(A), generally described as Ohio's long-arm statute for personal jurisdiction. While subsection (A) contains nine separate numbered paragraphs, each is separated by a semicolon and not connected by either language in the conjunctive or disjunctive. A reading of the section clearly reflects that the disjunctive is to be assumed as each of the nine numbered sub-paragraphs contain a separate test for determining personal jurisdiction. The pertinent language from § 2307.382 is as follows:

2

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons':
> > (1) Transacting any business in this state;
> > (2) Contracting to supply services or goods in this state * * * *

Clearly, sub-sections (1) and (2) are to be considered separately and it would appear that subsection (2), contracting to supply goods in the State of Ohio, would be the operative section for the Court's primary consideration, although the parties make much of subsection (1), the transaction of any business in this state. In either event the case law teaches that these jurisdictional issues are to be decided on the facts of each case. The instant case presents an extremely close and difficult determination for the Court.

## DISCUSSION

The parties have cited the Court to a plethora of cases considering the issues before it. The case notes which follow the statute contain eleven pages of cases or Ohio Attorney General opinions citations, each of which pages contains two columns, small type, and is single spaced. The Court notes this because of the tremendous number of cases which could be considered, but, as previously stated, each case is to be considered on its own facts.

This Court must first look at whether a defendant is amenable to suit under the laws of the State of Ohio. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110 (6th Cir. 1994). However, even if Ohio law grants this Court "in personam" jurisdiction, due process requires that the Court determine if Born has "certain minimum contacts with (Ohio) such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Thus, in determining whether this Court has personal jurisdiction a decision must be made as to both the Ohio long arm statute applicability and

3

whether minimum contacts exist pursuant to the transaction entered into between the parties. *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000).

The Sixth Circuit Court of Appeals, in determining whether the trial court's exercise of personal jurisdiction complies with the requirements set forth in *International Shoe,* has established the following three requirements:

> 1. A defendant must have purposefully availed itself of the privilege of acting in the foreign State or causing a consequence there;
> 2. The claim must arise from the defendant's activities in the forum;
> 3. The acts of the defendant or the consequences caused must have a substantial enough connection with forum State to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

The case law places the burden on a plaintiff to establish jurisdiction when the matter has been placed at issue by the defendant. From the dozens of cases considering the issues before this Court, the parties have cited several, with each party stressing those cases perceived as having the greatest impact on and supportive of its position. An older case from the Sixth Circuit is extremely instructive here. *In-flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972) involved issues quite similar to the case at bar. *In-flight* was incorporated under the laws of and had its principal place of business in Ohio, while *Van Dusen* was incorporated and had its principal place of business in Minnesota. Obviously, the litigation indicated that jurisdiction over the subject matter was predicated on diversity of citizenship under 28 U.S.C. § 1332. In-flight manufactured airplane parts; its offices and plant were located in Columbus, Ohio. Van Dusen distributed airplane parts with its headquarters in Minneapolis and a purchasing operation in St. Louis, Missouri; it sold airplane parts throughout the country through wholly-owned subsidiaries. Van Dusen was not licensed to do business in Ohio nor did it have a resident agent within that

4

state. In May, 1970 the parties began negotiations toward Van Dusen's purchase of 1,000 aircraft "transponders"; during the negotiation process officers of In-flight flew to Minneapolis to discuss the propsoed transaction. They also flew to St. Louis for further discussions where In-flight presented a hand drawn purchase order for the transponders. Later that same day a meeting was arranged in Ohio in a city in which Van Dusen's Ohio subsidiary had its offices. The last meeting in Ohio may not have been a negotiation session, but, similar to the meeting of the parties in this case in Lima, Ohio in April, 2003, involved plans for delivery of the transponders and discussions of their operational features. Subsequently, Van Dusen failed to be able financially to meet its payment obligations to In-flight, which filed suit for breach of contract and damages.

The *In-flight* court had before it the consideration of both the transacting business and causing tortuous injury in Ohio subsections represented by subsections (1) and (3) of the Ohio statute. The question framed by that Court was whether a determination that the Defendant transacted business in Ohio, thus rendering it subject to the jurisdiction of Ohio courts, violated the due process rights of the defendant. As noted above, this is not a mechanical test and the *In-flight* court so articulated:

> While the three Supreme Court decisions have provided an overall framework within which to work, they do not provide a mechanical test which can eliminate the need to consider the jurisdictional facts of each case individually, to make judgments as to the substantiality of contacts with the forum state and the fairness and justice of subjecting a specific defendant to the in personam jurisdiction of the forum state.

*Id.* at 14.

The Court reviewed the tests required under *Southern Machine* and stated that in this Circuit one has acted so as to transact business in the state "when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the

5

commerce of that state . . . ." Such acts become purposeful if the defendant "should have reasonably foreseen that the transaction would have consequences in that state." 401 F.2d 374, 382-383. In the *In-flight* case, the defendant Van Dusen had entered into a contract involving a substantial order for the manufacture of goods with a firm which it necessarily knew was based in Ohio. The court determined that both the making and breaching of such contract would have substantial consequences within the State of Ohio, which Van Dusen would or should have recognized. The making of a substantial business contract with a corporation based in another jurisdiction has been held to appropriately and adequately satisfy the requirements of the "purposeful availment" test of *Southern Machine*. However, one must look further to determine whether jurisdiction is appropriate under the facts of a given case.

The *In-flight* court stressed that a significant, probably the most significant determination under the *Southern Machine* analysis, is whether a defendant has sufficient contact with Ohio to make exercise of jurisdiction in this forum reasonable and fair under the due process clause. The *In-flight* court held that the contract calling for substantial production of goods was entered into, and the production of goods and other performance under that contract was to take place, entirely within the forum State. The court articulated that "it is apparent that Ohio would have at least some interest in resolving a contractual dispute, for example, between a non-resident consumer and an Ohio mail order company which sought to collect an unpaid bill from the consumer." *In-flight*, 466 F.2d at 33. The court further stated:

> Courts frequently have distinguished between buyer and seller in applying long-arm statutes. * * * Jurisdiction has more often been assumed over non-resident sellers than over non-resident buyers. To an extent the bias reflected in such fact is justified. In our economy the seller often initiates the deal, tends to set many, if not all of the terms on which it will sell, and, of course, bears the burden of producing the goods or services, in the course of which production inquiries and other

6

> incidents giving rise to litigation frequently arise. The buyer, on the other hand is frequently a relatively passive party, simply placing an order, accepting the seller's price and terms as stated in his product advertising and agreeing only to pay a sum upon receipt of the goods or services. It is understandable that sellers more often seem to have acted in a manner rendering them subject to long-arm jurisdiction.

*Id*. at 232-233. (Internal citations omitted).

Further considerations include whether the transaction was created through physical presence and negotiations in the state, which alone are not determinative. In today's world many of the transactions are accomplished through electronic media or the mails, as was the primary instance here. The *In-flight* court held that the exercise of jurisdiction over Van Dusen was permitted under the Ohio long-arm statute and that such jurisdiction did not violate the notions of fair play required under due process.

This Court has also reviewed each of the cases cited by the parties and will not reiterate what has been set forth in their memoranda. In considering the impact of the facts of this case on the law controlling, the Court finds that the following weigh in favor of Defendant's motion rejecting jurisdiction by this Court: the solicitation was by mail and accepted by mail; all manufacturing by Defendant was in Oklahoma; the equipment was to be shipped F.O.B. Ohio but at Plaintiff's expense; the meeting which took place in Lima, Ohio was after the contract was negotiated and signed; and there was no continuing course of dealing between the parties, in other words, this was a one time transaction.

Militating in favor of this Court finding it has personal jurisdiction are the following: Plaintiff sent out bids to multiple parties, as to which Defendant Born responded to the solicitation; the final contract required use of Ohio law; the equipment was to be shipped to Ohio; because the manufactured equipment of Defendant was to be incorporated into other equipment at

7

Plaintiff's facility in Lima, Ohio, it was clear that any failure to deliver in accordance with the contract terms would clearly have a significant and adverse economic impact on Premcor and Ohio.

Balancing all of these considerations, this Court finds that Defendant's contracting to supply goods to Premcor for delivery to and incorporating in its facility in Lima, Ohio justifies finding appropriate personal jurisdiction under the Ohio long-arm statute. The facts demonstrate a purposeful availment of the forum state in more than "random, "fortuitous" or "attenuated" contacts with the State of Ohio. While Born did not initiate the transaction, Premcor solicited bids and Born did, in fact, respond in detail and undertake negotiations which led to the ultimate contract. As stated in *Burger King v. Rudzewicz,* 471 U.S. 462 (1985), Ohio has a "manifest interest" in providing a forum for residents injured by out-of-state actors. The Court believes that the mandates of *World Wide Volkswagen* are met in that it was reasonably foreseeable that Born's alleged breach could result in its being haled into court in this forum. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). The foreseeability is satisfied by Born's purposeful availment of doing business in Ohio and committing to delivering a piece of valuable equipment to be integrated into existing facilities in Premcor's Lima, Ohio refinery. The Court agrees that the tests mandated by *Southern Machine* have been met so as to justify the Court's denial of Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (3).

In the alternative Born has urged the Court that venue in this case should be transferred to the Northern District of Oklahoma because of the numerosity of non-party witnesses located in Oklahoma. Both parties have cited the multiplicity of witnesses anticipated to be called, if not for trial, at least on deposition in connection with this case. It is significant that the damage issues

arise out of Premcor's "cover" through another vendor/manufacturer and the consequential damages in its operations in Lima, Ohio will be substantiated through witnesses within and without the State of Ohio. Militating in favor of retaining appropriate venue in this district is that this Court, while not having the exclusive ability to interpret Ohio law, is at least more familiar than an Oklahoma court with that law. Since the choice of law provision in the contract entered into between the parties requires the application of Ohio law, this is another reason for retention of venue in this Court. For the foregoing reasons, Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) will be denied; the Court finds that venue is proper here and that the interests of justice and convenience of the parties and witnesses are just as well met in this jurisdiction as in the Northern District of Oklahoma.

## CONCLUSION

For the reasons cited above, the motions of Defendant, Born Inc., to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) and (3) and request for an order transferring venue pursuant to 28 U.S.C. § 1404 (a) are denied. This case is set for a telephone case management conference on February 13, 2006 at 10:15 a.m.

IT IS SO ORDERED.

     S/ *David A. Katz*
     DAVID A. KATZ
     SENIOR U. S. DISTRICT JUDGE